William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pbwt.com

*Attorneys for Defendants The Metropolitan Museum of Art,*
*Whitney Museum of American Art, The Museum of Modern Art,*
*The Solomon R. Guggenheim Foundation (incorrectly sued as*
*"Solomon R. Guggenheim Museum"), and The New*
*Museum of Contemporary Art*

<div align="center">

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

</div>

| | |
|---|---|
| ROBERT CENEDELLA, on behalf of himself and all other similarly situated, | Civil Action No.: |
| *Plaintiffs,* | 18-CV-1029 (JGK) |
| vs. | |
| METROPOLITAN MUSEUM OF ART, WHITNEY MUSEUM OF AMERICAN ART, MUSEUM OF MODERN ART, SOLOMON R. GUGGENHEIM MUSEUM, AND NEW MUSEUM OF CONTEMPORARY ART, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** |
| *Defendants.* | |

10357766

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ..........................................................................................................................4

I.   Standard of Review ......................................................................................................4

II.  Plaintiff Has Not Alleged Article III Standing ..........................................................6

III. Plaintiff Fails to State a Claim Under Section 1 of the Sherman Act.......................8

    A. Legal Standard ......................................................................................................8

    B. The Complaint Fails to Plausibly Allege an Agreement in Violation of the
       Antitrust Laws.......................................................................................................9

    C. The Complaint Is Inadequately Pleaded Under the Rule of Reason Standard .................11

       1. New York City is not a plausible relevant geographic market .....................13

       2. Plaintiff fails to adequately plead an adverse effect on competition ...........15

       3. Plaintiff lacks antitrust standing.................................................................17

IV. Plaintiff's Donnelly Act Claim Fails to State a Claim...............................................21

V.  Plaintiff's Claims Should Be Dismissed with Prejudice ...........................................21

CONCLUSION......................................................................................................................22

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Labs v. Adelphia Supply USA*,
  15. Civ. 5826, 2017 U.S. Dist. LEXIS 205321 (E.D.N.Y. Aug. 10, 2017) ...................15, 16

*Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*,
  56 F. Supp. 3d 436 (S.D.N.Y. 2014)....................................................................................12

*Allen v. Wright*,
  468 U.S. 737 (1984)..............................................................................................................7

*In re Aluminum Warehousing Antitrust Litig.*,
  13 md 2481, 2014 U.S. Dist. LEXIS 121435 (S.D.N.Y. Aug. 29, 2014)..................2, 6, 8, 11

*In re Aluminum Warehousing Antitrust Litig.*,
  833 F.3d 151 (2d Cir. 2016)................................................................................................17

*Ariel (UK) Ltd. v. Reuters Grp., PLC*,
  277 F. App'x 43 (2d Cir. 2008) ..........................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................4, 5, 15

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)......................................................................................................17, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................8, 9

*Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc.*,
  34 A.D.3d 91, 823 N.Y.S.2d 79 (2d Dept. 2006) ................................................................21

*Bogosian v. Gulf Oil Corp.*,
  561 F.2d 434 (3d Cir. 1977).................................................................................................11

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
  485 U.S. 717 (1988).........................................................................................................8, 11

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
  996 F.2d 537 (2d Cir. 1993).................................................................................................12

*Carson Optical Inc. v. eBay Inc.*,
  202 F. Supp. 3d 247 (E.D.N.Y. 2016) ...................................................................................5

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
   11 F. Supp. 3d 317 (E.D.N.Y. 2014) ....................................................................22

*Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.*,
   15 Civ. 5488, 2016 U.S. Dist. LEXIS 135941 (S.D.N.Y. Sep. 29, 2016) ..............21

*Concord Assocs., L.P. v. Entm't Props. Tr.*,
   817 F.3d 46 (2d Cir. 2016).............................................................................13, 14

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
   790 F.3d 411 (2d Cir. 2015)..................................................................................4

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005)....................................................................18, 19, 20

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*,
   129 F.3d 240, 244–46 (2d Cir. 1997).................................................................12

*Fadem v. Ford Motor Co.*,
   02 Civ. 0686, 2003 U.S. Dist. LEXIS 16898 (S.D.N.Y. Sep. 24, 2003) ..................5

*Garcia v. Paylock*,
   13 Civ. 2868, 2014 U.S. Dist. LEXIS 10568 (E.D.N.Y. Jan. 28, 2014)................21

*Gatt Communs., Inc. v. PMC Assocs., L.L.C.*,
   711 F.3d 68 (2d Cir. 2013).............................................................................17, 21

*Gelb v. FRB of N.Y.*,
   12 Civ. 4880, 2016 U.S. Dist. LEXIS 115781 (S.D.N.Y. Aug. 29, 2016) ...............7

*Gelboim v. Bank of Am. Corp.*,
   823 F.3d 759, 779 (2d Cir. 2016)........................................................................21

*George Haug Co. v. Rolls Royce Motor Cars, Inc.*,
   148 F.3d 136, 139 (2d Cir. 1998)........................................................................12

*Global Discount Travel Servs., LLC v. TWA*,
   960 F. Supp. 701, 704–05 (S.D.N.Y. 1997) ........................................................13

*Heerwagen v. Clear Channel Commc'ns*,
   435 F.3d 219 (2d Cir. 2006)................................................................................14

*IQ Dental Supply, Inc. v. Henry Schein, Inc.*,
   17 Civ. 4834, 2017 U.S. Dist. LEXIS 211070 (E.D.N.Y. Dec. 21, 2017) ...............6

*Integrated. Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
   713 F. Supp. 2d 286, 299 (S.D.N.Y. 2010) .........................................................17

iii

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................7

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012)..................................................................................6

*Mathias v. Daily News, L.P.*,
  152 F.Supp.2d 465 (S.D.N.Y. 2001)..................................................................13

*Mayor & Council of Balt. v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013)...................................................................8, 9, 10,11

*Menkes v. St. Lawrence Seaway Pilots' Ass'n*,
  269 F. App'x 54 (2d Cir. 2008) ..........................................................................21

*Mooney v. AXA Advisors, L.L.C.*,
  19 F. Supp. 3d 486 (S.D.N.Y. 2014)......................................................12, 13, 21

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
  595 F.3d 86 (2d Cir. 2010)...................................................................................4

*Paycom Billing Servs. v. MasterCard Int'l, Inc.*,
  467 F.3d 283 (2d Cir. 2006)...............................................................................18

*Pepsico, Inc. v. Coca-Cola*,
  315 F.3d 101 (2d Cir. 2002)...............................................................................12

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
  507 F.3d 117 (2d Cir. 2007)...............................................................................17

*In re Publ'n Paper Antitrust Litig.*,
  690 F.3d 51 (2d Cir. 2012).................................................................................8

*Rangel v. Boehner*,
  20 F. Supp. 3d 148 (D.D.C. 2013) .......................................................................7

*Re-Alco, Indus. Inc. v. Nat'l Ctr. For Health Educ, Inc..*,
  812 F. Supp. 387 (S.D.N.Y. 1993) ....................................................................13

*Reading Indus. v. Kennecott Copper Corp.*,
  631 F.2d 10 (2d Cir. 1980).................................................................................20

*Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)...............................................................5, 8

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)................................................................................5

iv

*Sanjuan v. Am. Bd. of Psychiatry & Neurology*,
    40 F.3d 247 (7th Cir. 1994) ........................................................................19

*Solent Freight Servs. v. Alberty*,
    914 F. Supp. 2d 312 (E.D.N.Y. 2012) ....................................................12, 16, 21

*Spiteri v. Russo*,
    No. 12 Civ. 2780, 2013 U.S. Dist. LEXIS 128379 (E.D.N.Y. Sept. 7, 2013) ........................5

*Tops Mkts., Inc. v. Quality Mkts., Inc.*,
    142 F.3d 90 (2d Cir. 1998)........................................................................17

*Williams v. Citigroup*,
    659 F.3d 208 (2d Cir. 2011)......................................................................21

**Statutes**

15 U.S.C. § 1 ......................................................................................8, 12

**Other Authorities**

2A Phillip E. Areeda et al., *Antitrust Law: An Analysis of Principles and Their Application*
    (4th ed. 2014) ...................................................................................6

Fed. R. Civ. P. 12(b)(1) ...............................................................................4

Fed. R. Civ. P. 12(b)(6)...............................................................................4

N.Y. Comp. Codes R. & Regs. tit. 8, § 3.27 .........................................................2, 10

U.S. Const. Art. III, § 2...............................................................................6

10357766

Defendants The Metropolitan Museum of Art, Whitney Museum of American Art, The Museum of Modern Art, The Solomon R. Guggenheim Foundation (incorrectly sued as the "Solomon R. Guggenheim Museum"), and The New Museum of Contemporary Art (collectively, the "Museums" or "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff Robert Cenedella's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  As explained herein, Plaintiff lacks standing and his Amended Complaint ("Complaint" or "AC") falls far short of stating a plausible claim. Given the premise of the case, there is no conceivable way Plaintiff can do so.  Plaintiff has already had an opportunity to amend; accordingly, dismissal should be with prejudice.

## PRELIMINARY STATEMENT

Plaintiff is disappointed that the five museums named as Defendants in this case have not purchased or exhibited his artwork.  But this grievance has nothing to do with the law, let alone the antitrust laws, which are intended to protect competition.

Plaintiff's Complaint is difficult to interpret because it contains allegations that are disjointed and contradictory.  Plaintiff seems to allege that the Museums have conspired with "a few prominent galleries" to preclude Plaintiff and other unidentified contemporary artists from obtaining "access to the market for contemporary art" while seeking to increase prices for the artists whose work the Museums already own.  The notion that five nonprofit museums would or even *could* conspire to somehow manipulate the art market so as to inflate the price of the art they hold or acquire, as well as their insurance costs, is fundamentally implausible.

Plaintiff's claim under Section 1 of the Sherman Act fails for several independent reasons.  *First*, Plaintiff fails to allege Article III standing.  *Second*, Plaintiff fails to plausibly plead the existence of an agreement in violation of the antitrust laws, or any specific facts to infer

1

its existence.  *Third*, Plaintiff fails to plausibly plead the contours of the relevant geographic market or an anti-competitive effect of the Defendants' alleged actions as required under the rule of reason, which applies in this case.  *Fourth*, Plaintiff has not adequately alleged antitrust standing.  Plaintiff's Donnelly Act claim fails for largely the same reasons.

Because any amendment to the Complaint would be futile, and because this Court has already given Plaintiff an opportunity to amend, the Complaint should be dismissed with prejudice.

## **BACKGROUND**

The following allegations are taken from the Complaint.  By reciting them here, Defendants do not concede their truth.[1]

Plaintiff Robert Cenedella describes himself as a contemporary artist who lives in New York City.  AC ¶ 5.  Allegedly, his work has been featured in shows "throughout the United States and Europe," and Cenedella himself was the subject of a documentary.  *Id.* ¶ 6.  Plaintiff purports to represent a "*nationwide* class of contemporary artists who . . . have cr[e]ated artwork eligible for exhibition in major contemporary art museums in the United States" (the "Class").  *Id.* ¶ 54 (emphasis added).  While he alleges that New York is the relevant geographic market, he

---

[1] Indeed, many of the "facts" in the Complaint are demonstrably false.  For example, Plaintiff claims that "none [of the Museums' acquisition policies] are publicly disclosed."  AC ¶ 16.  However, the Museums who collect work and are chartered by the Regents of the University of the State of New York are required by law to make their collection policies publicly available.  *See* 8 N.Y. Comp. Codes R. & Regs. ("NYCRR"), § 3.27(6)(iii).  A court may take such plain misstatements into account when determining the plausibility of Plaintiff's allegations.  *See In re Aluminum Warehousing Antitrust Litig.*, 13 md 2481, 2014 U.S. Dist. LEXIS 121435, at *61 n.22 (S.D.N.Y. Aug. 29, 2014), *aff'd*, 833 F.3d 151 (2d Cir. 2016).

also claims the purported conspiracy has impacted the national and global art market. *Compare* AC ¶ 48, *with id.* ¶¶ 1–2 (citing the "market for contemporary art in the United States and internationally" and claiming a substantial effect on "interstate trade").

The Complaint states that the Museums are "the arbiters of contemporary art." *Id.* ¶ 13. Although the Complaint alleges that the Museums are "prolific purchasers of contemporary art," *id.* ¶ 15, it also inconsistently alleges that "80 to 90 percent of what is on view in American art museums" is donated by private collectors, *id.* ¶ 19. The Complaint also contends that the Museums are "direct" competitors with Plaintiff and other contemporary artists because they own contemporary artwork, and that the Museums "control the contemporary art market in New York City," *id.* ¶¶ 3, 37, 39. It also ascribes significant power to auctions houses, galleries, and private art collectors. *Id.* ¶¶ 19–21.

The Complaint further alleges "that there is an explicit agreement between the Defendants and [five] galleries to feature, promote, and purchase the artwork of only a select few contemporary artists." *Id.* ¶ 29. In this "conspiracy," the galleries[2] provide financial support to the Museums in order to encourage the Museums to feature the galleries' artists (and only their artists), thereby ensuring that the prices for these artists will rise. *Id.* ¶¶ 22, 25–26, 31–35. Plaintiff alleges no facts to support the existence of any alleged explicit agreement: no date or time the agreement was made; no names of people who discussed or consummated such an

---

[2] While Plaintiff makes reference to five specific non-party galleries, *see, e.g.*, AC ¶ 28, his alleged conspiracy also includes other, unidentified galleries, *compare id.* ¶ 22 (contending a "closed system of museums, auction houses, and galleries" exists), *with id.* ¶ 38 (alleging a separate conspiracy of "museums, the five [named] galleries, artists, and prominent art collectors").

agreement; nor a reason why the Museums would want to drive up the price of works of art they acquire (thereby raising their own costs).

Despite explaining that his work has been featured throughout the United States and Europe, *id.* ¶ 6, Plaintiff claims that the purported conspiracy has denied him and the putative class access to the New York City market for contemporary art, *id.* ¶¶ 1, 48.  He also claims that, due to the alleged conspiracy, the prices for the contemporary artists featured by the Museums have been improperly inflated, while he cannot sell his work "in the same manner."  *Id.* ¶ 46.

## ARGUMENT

### I.    STANDARD OF REVIEW

A court must dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction where "the plaintiff lacks constitutional standing to bring the action."  *Cortlandt St. Recovery Corp. v. Hellas Telecommunications S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).  The plaintiff bears the burden of demonstrating standing.  *Id.*

The Federal Rules of Civil Procedure also require dismissal of a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This obligates a plaintiff to set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"  *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

Although a court must accept as true all well-pleaded factual allegations in the complaint, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."

10357766

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Where the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Id.* at 679 (citing Fed.

R. Civ. P. 8(a)(2)) (alterations omitted).  Determining whether a complaint states a plausible

claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  *Iqbal*, 556 U.S. at 679.  Documents incorporated by reference

in the complaint are "deemed part of the pleading and may be considered" in deciding a motion

to dismiss.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Fadem v. Ford Motor

Co.*, 02 Civ. 0686, 2003 U.S. Dist. LEXIS 16898, at *6 (S.D.N.Y. Sep. 24, 2003) ("[T]he full

text of any document quoted or referred to in a complaint, including news articles, may be

considered by the Court on a motion to dismiss.").[3]

Notably, where a complaint is internally inconsistent due to allegations that contradict or

undermine each other, the court "is neither obligated to reconcile nor accept the contradictory

allegations in the pleadings as true in deciding a motion to dismiss."  *See, e.g.*, *Carson Optical

Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) (internal citations omitted); *Spiteri

v. Russo*, No. 12 Civ. 2780, 2013 U.S. Dist. LEXIS 128379, at *29–30 (E.D.N.Y. Sept. 7, 2013)

(collecting cases), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015); *Rieger v.

Drabinsky (In re Livent Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)

("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense,

or that would render a claim incoherent, or that are contradicted either by statements in the

complaint itself or by documents upon which its pleadings rely, or by facts of which the court

may take judicial notice.").  Similarly, "allegations directly contradicted by the public record

---

[3] The Complaint cites a number of news articles.  *See* AC nn.1–14.

5

impact plausibility." *In re Aluminum Warehousing Antitrust Litig.*, 2014 U.S. Dist. LEXIS

121435, at *61 n.22.

## II.     PLAINTIFF HAS NOT ALLEGED ARTICLE III STANDING

Article III, Section 2 of the U.S. Constitution limits the jurisdiction of the federal courts

to "the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d

Cir. 2012). To satisfy the "irreducible constitutional minimum of standing, a plaintiff must

demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused

and (3) which a favorable decision will likely redress." *Id.* (internal citations and quotations

omitted). No matter how Plaintiff's alleged injury is characterized, he has not alleged Article III

standing to bring this suit.

*First*, Plaintiff alleges that the Museums have conspired with the galleries and others to

artificially inflate prices of certain contemporary art. *See* AC ¶¶ 2, 22, 37. But Plaintiff claims

to be a competitor in the contemporary art market, not a purchaser of art, and so he has not

suffered any injury. If other work competing with his work is more expensive, it allows him to

either raise his prices or makes his work more attractive to potential purchasers. 2A Phillip E.

Areeda et al., *Antitrust Law: An Analysis of Principles and Their Application,* ¶ 348b at 232 (4th

ed. 2014); *see also IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 17 Civ. 4834, 2017 U.S. Dist.

LEXIS 211070, at *16–17 (E.D.N.Y. Dec. 21, 2017) (plaintiff "cannot claim to be a competitor

of defendants and also claim to have been injured by their imposition of supercompetitive prices

on the market.").

*Second*, insofar as Plaintiff alleges the price of his work is depressed because his art is

not shown by any of the Museums, he has not alleged that this injury is either "fairly traceable"

to the alleged conduct or redressable through equitable relief in this action. *Allen v. Wright*, 468

U.S. 737, 758 (1984).  As Plaintiff alleges, the Museums "are the arbiters of contemporary art," AC ¶ 13, whose decisions are driven by "curator's . . . artistic standards," *id.* ¶ 27.  He has not demonstrated a "substantial likelihood" that a favorable decision here would redress his injury, *see Gelb v. FRB of N.Y.*, 12 Civ. 4880, 2016 U.S. Dist. LEXIS 115781, at *13 (S.D.N.Y. Aug. 29, 2016), because he has not alleged facts permitting an inference that, but for the purported conspiracy, curators' artistic standards would alter so that his work, rather than another contemporary artist's work, would be acquired or displayed by one of the Museums, or even that his chances of doing so would increase.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff lacks standing where it is "merely speculative . . . that the injury will be redressed by a favorable decision" (internal quotation marks omitted)); *cf. Rangel v. Boehner*, 20 F. Supp. 3d 148, 161–62 (D.D.C. 2013) (plaintiff lacks standing where action that would provide relief lies within the "unbridled discretion" of the decisionmaker), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015).  Plaintiff has not alleged, for example, that *other* museums in the United States or abroad have acquired or exhibited his work, suggesting that his lack of success with the Museums has nothing to do with any purported conspiracy.

*Third*, Plaintiff's assertion that the Museums have deprived him of "access to the market for contemporary art in the United States and internationally," AC ¶ 1; *see also id.* ¶ 66, is undercut by his own allegations.  He states that he "has produced contemporary art for commercial sale in New York City and throughout the United States," *id.* ¶ 43, and that his "artwork has been the subject of one-man shows throughout the United States and Europe," *id.* ¶ 6.  These statements demonstrate that he has not been excluded from putting his work on the market.  As a result, the Court need not ascribe his conclusory statements about exclusion from

the market any weight or deference, *see In re Livent*, 151 F. Supp. 2d at 405–06, and Plaintiff

cannot bring this suit on the basis of exclusion from the market.

### III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT

#### A.    Legal Standard

Section 1 of the Sherman Act prohibits contracts, combinations, or conspiracies that

unreasonably restrain trade.  *See* 15 U.S.C. § 1; *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S.

717, 723 (1988).  However, Section 1 does not proscribe unilateral or independent business

decisions.  *In re Aluminum Warehousing Antitrust Litig.*, 2014 U.S. Dist. LEXIS 121435, at *92

(citing *Copperweld Corp. v. Ind. Tube Corp.*, 467 U.S. 752, 755 (1984)).  A plaintiff asserting a

violation of Section 1 must therefore "allege enough facts to support the inference that a

conspiracy actually existed."  *Mayor & Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d

Cir. 2013).  This can be done by presenting either direct evidence of an agreement or

circumstantial facts supporting the inference that a conspiracy existed.  *Id.* at 136.  Either way,

the plaintiff's allegations "must support a unity of purpose, common design and understanding,

or a meeting of the minds in an unlawful agreement."  *In re Aluminum*, 2014 U.S. Dist. LEXIS

121435, at *99.

Notably, allegations of parallel behavior alone are insufficient to support a Section 1

claim.  *Twombly*, 550 U.S. at 556–57.  Even "conscious parallelism" is not itself unlawful.  *In re*

*Aluminum*, 2014 U.S. Dist. LEXIS 121435, at *100.  Rather, a plaintiff must show additional

circumstances—"plus factors"—which, "when viewed in conjunction with the parallel conduct,

would permit a fact-finder to infer a conspiracy."  *In re Publ'n Paper Antitrust Litig.*, 690 F.3d

51, 62 (2d Cir. 2012).  These plus factors may include "a common motive to conspire, evidence

that shows that the parallel acts were against the apparent individual economic self-interest of the

8

alleged conspirators, and evidence of a high level of interfirm communications." *Mayor & City Council of Balt.*, 709 F.3d at 136 (internal quotation marks omitted).

**B.      The Complaint Fails to Plausibly Allege an Agreement in Violation of the Antitrust Laws**

The Complaint fails at the threshold because it simply does not meet the basic obligation of plausibly pleading an agreement:  it does not contain "enough factual matter (taken as true) to suggest that an agreement was made," thereby raising "a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56.  Plaintiff's Complaint rests on only generalities and speculation.  Notably absent are any well-pleaded facts that would tend to show either an agreement between the Museums, or between any combination of a museum, gallery, and/or auction house to restrain trade.  The Complaint does not allege (1) who among the Museums' employees or agents created this purported conspiracy, (2) when the purported conspiracy was entered into, or (3) whether the purported conspiracy is horizontal or vertical (or both).

What little factual material the Complaint contains does not raise any inference of an anticompetitive agreement, either among the Museums or between any Museum and any other entity or person.  Plaintiff relies on a 2016 article contending that museums throughout the country give "almost one-third" of their solo exhibitions to artists represented by five galleries.  Plaintiff states that this article evidences an "explicit agreement" to promote the work of certain unnamed artists.  AC ¶¶ 28–29.[4]  But neither this article, nor the Complaint, contain any facts supporting an inference of an agreement between the Museums and these five galleries (or any Museum and any gallery) to deal exclusively or otherwise.  There are no allegations that the five

---

[4] Citing Julia Halperin, "Almost one third of solo shows in US museums go to artists represented by just five galleries," The Art Newspaper (Apr. 2, 2015), Declaration of William F. Cavanaugh, Jr. in Support of Defendants' Motion to Dismiss the Amended Complaint ("Cavanaugh Decl."), Ex. 1.

9

Museums give the majority of *their* solo exhibitions to artists represented by the five relevant galleries. *See, e.g.*, *id.* ¶¶ 29–30.  The Complaint is also devoid of allegations regarding the galleries that represent the artists featured in *group* exhibitions, which Plaintiff states also provide valuable career boosts to artists.  *See id.* ¶ 25.

Moreover, Plaintiff's allegation that the Museums operate this alleged conspiracy for their own profit is fundamentally implausible.  According to the Complaint, the goal of the conspiracy is for the Museums to drive up the value of art in their collection.  *See id.* ¶¶ 23, 36–38.  But the Complaint contains *no* allegations that the Museums *sell* contemporary art or otherwise monetize the allegedly increasing value of their collection.  Instead, the effect of increasing prices of the work of a limited group of artists would raise the Museums' own cost of acquiring work by those artists and lead to higher insurance costs.  *See id.* ¶¶ 15 (the Museums are acquirers of contemporary art); 20 (Museums' insurance valuations match recent sales figures); *see also* AC ¶ 26 & n. 6, Robin Pogrebin, "Art Galleries Face Pressure to Fund Museum Shows," N.Y. Times (Mar. 7, 2016) (noting that "the cost of mounting [exhibitions] has grown [as] a result of increasingly pricey line items like insurance"), Cavanaugh Decl. Ex. 2.  A conspiracy that only increases the financial burden on the alleged conspirators is completely implausible.

Further, there are simply no "plus factors" here that would support the inference of a conspiracy.  *See Mayor & City Council of Balt.*, 709 F.3d at 136.  First, the Complaint does not offer any common motive for the Museums (who compete with each other for visitors and donations) to conspire.  *See id.*  Indeed, it makes little sense to suggest that any Museum would want to (1) limit itself to acquiring art from the same few galleries or artists as the other Museums; (2) pay any more for the contemporary art they purchase than absolutely necessary; or

10

(3) raise the price of acquiring and insuring its works.  Second, the Complaint provides no

evidence that the Museums consciously avoided competing with each other to acquire or show

the work of contemporary artists or otherwise acted to eliminate price competition "against the

apparent individual economic self-interest" of each of them.  *See id.*; *Bogosian v. Gulf Oil Corp.*,

561 F.2d 434, 446 (3d Cir. 1977).  Nor could it, given that the Museums are just five out of

countless purchasers of contemporary art in the alleged geographic market and beyond.  Finally,

the Complaint contains no "evidence of a high level of interfirm communications." *Mayor &*

*City Council of Balt.*, 709 F.3d at 136.  No persons, places, dates, times, or communications are

mentioned.  *See id.* at 139 (allegations of two communications between competitors deemed

insufficient);  *In re Aluminum Warehousing Antitrust Litig.*, 2014 U.S. Dist. LEXIS 121435, at

*118.

     Accordingly, the Complaint should be dismissed for failure to plausibly allege a

conspiracy.

**C.**    **The Complaint Is Inadequately Pleaded Under the Rule of Reason Standard**

     To the extent that Plaintiff alleges the existence of a conspiracy whereby certain galleries

sell art to the Museums and provide them with financial support for their exhibitions, this would

be a vertical agreement subject to analysis under the rule of reason.  There are no plausible

allegations that the galleries are the Museum's competitors,[5] or any other indicia that would

trigger a *per se* standard.  *See Bus. Elec. Corp.*, 485 U.S. at 726 (presumption in favor of a rule-

of-reason standard); *Solent Freight Servs. v. Alberty*, 914 F. Supp. 2d 312, at 320–21 (E.D.N.Y.

2012) (declining to apply *per se* standard because alleged co-conspirators did not compete with

---

[5] Common sense dictates that commercial art galleries and the Museums, which are nonprofit

organizations dedicated to displaying and collecting art (not selling it), are not competitors.

each other); *Pepsico, Inc. v. Coca-Cola*, 315 F.3d 101, 110–11 (2d Cir. 2002) (per curiam) (*per se* analysis improper in hub & spokes conspiracy despite horizontal effects of a series of vertical agreements); *see also Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 56 F. Supp. 3d 436, 448 (S.D.N.Y. 2014) ("the presence of even [a] significant horizontal dimension, alongside a vertical one, does not trigger *per se* review").[6]

In order to allege a Section 1 violation under the rule of reason, a plaintiff must plead facts that plausibly suggest "that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993); *see also George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 139 (2d Cir. 1998); *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 244–46 (2d Cir. 1997). Thus, a plaintiff alleging an antitrust violation under the rule of reason must allege facts that describe "the contours of the relevant market, the anticompetitive effects the restraint has on that market, and an injury suffered by the plaintiff that the antitrust laws were intended to prevent and that flows from that which makes the restraint unlawful." *Mooney*, 19 F. Supp. 3d at 498.

"[T]he geographic market analysis seeks to identify the precise geographic boundaries of effective competition in order to reach a more informed conclusion on potential harm to the market." *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 480 (S.D.N.Y. 2001). Like the

---

[6] Even assuming *arguendo* that a *per se* standard was somehow appropriate here, Plaintiff's claim still fails. A plaintiff still must plausibly "plead facts describing the challenged conduct and the relevant market affected by the conduct." *Mooney v. AXA Advisors L.L.C.*, 19 F. Supp. 3d 486, 498 (S.D.N.Y. 2014). As described *infra* at 13–17, Plaintiff has failed to do so.

10357766

relevant market definition, the adverse effect on competition is a requirement that must be alleged at the pleading stage.  *Id.* (citing *Elecs. Commc'ns. Corp.*, 129 F.3d at 244–46; *Re-Alco Indus. Inc. v. Nat'l Ctr. For Health Educ., Inc.* 812 F. Supp. 387, 392 (S.D.N.Y. 1993)).  Failure to allege either a plausible relevant geographic market or impact on competition is grounds for dismissal.  *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 53 (2d Cir. 2016); *Global Discount Travel Servs.*, 960 F. Supp. 701, 704–05 (S.D.N.Y. 1997).

### 1.    New York City is not a plausible relevant geographic market

Like other aspects of the Complaint, the allegations regarding the relevant geographic market are contradictory.  Plaintiff states that the relevant market in this case is New York City. AC ¶¶ 47–48.  But, by his own allegations, his work has previously been shown "throughout the United States and Europe."  *Id.* ¶ 6.  Logically, if Plaintiff's work has been shown across the country and in Europe, the market for his products cannot be limited to New York.  *See Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 227 (2d Cir. 2006) (relevant market typically measured by looking to the "area of effective competition," or area in which "consumers can turn, as a practical matter, for supply of the relevant product"), *overruled on other grounds by Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008).

Plaintiff cites no facts to support an allegation that a purchaser of contemporary art is confined to acquiring from certain suppliers in New York City and could not readily turn to art sellers (whether they be a gallery, dealer, auction house, or private collector) in other cities or countries.  *See Concord Assocs., L.P.*, 817 F.3d at 54 (affirming 12(b)(6) dismissal for failure to allege a geographic market where plaintiff did not justify allegation that potential customers would not look to other locations for relevant product).  In addition, the articles Plaintiff cites in

10357766

the Complaint suggest a broad, fluid market for contemporary art nation- and worldwide.  *See, e.g.*, AC ¶ 47 & n.14, citing "The 15 Most Influential Art World Cities of 2015," *Artsy* (Dec. 15, 2015) ("a core contingent of the art world . . . crisscross[es] the globe to visit" each important city), Cavanaugh Decl. Ex. 3.[7]  The Complaint contains no facts regarding why other museums across the country that show artists represented by the five specified galleries (who each have locations in New York, elsewhere in the United States, and internationally) should not be considered part of this nationwide market, nor does it contain facts that would justify confining the market to New York City.  *See Concord Assocs., L.P.*, 817 F.3d at 53–54.  Instead, Plaintiff pleads only that New York City has many artists, galleries, and festivals, and that the majority of sales of art "for $1 million or more" took place in New York City.  AC ¶¶ 47–48.  These facts do not imply an isolated market, much less that it is the "relevant market" for works by Plaintiff and the Class, the sale prices of which are not pleaded in the Complaint.  On these allegations, the

---

[7] *See also* AC ¶¶ 19, 21 & nn.2 & 4, Allison Schrager, "High-end art is one of the most manipulated markets in the world," Quartz (July 11, 2013), (noting that art collector bought a piece in New York, then traveled to Miami Basel where she received an offer to buy it), Cavanaugh Decl. Ex. 4; AC ¶¶ 30, 32 & nn.9 & 10, Halperin, "Almost one third of solo shows in US museums go to artists represented by just five galleries," Art Newspaper (Apr. 2, 2015), (analyzing 600 exhibits at 68 museums across the U.S., including the Contemporary Arts Museum, Houston; the Hammer Museum, Los Angeles; and the Museum of Contemporary Art, Los Angeles; and the Walker Art Center in Minneapolis), Cavanaugh Decl. Ex. 1; AC ¶ 19 n.1, Judith Dobryznski, "How an Acquisition Fund Burnishes Reputations," N.Y. Times (Mar. 14, 2012), (discussing Kimbell Art Museum in Fort Worth, Seattle Museum of Art, Cleveland Museum of Art, and Detroit Institute of Art), Cavanaugh Decl. Ex. 5.

14

narrow market pleaded by Plaintiff is implausible and should be rejected.  *See Iqbal*, 556 U.S. at 679.[8]

### 2.   Plaintiff fails to adequately plead an adverse effect on competition

Even assuming *arguendo* that the alleged relevant geographic market is plausible, the allegations of adverse effect on competition remain inadequate.  "A plaintiff may show an actual adverse effect on competition by showing increased prices, reduced quality, or reduced outputs," or, where "a plaintiff is unable to demonstrate such actual effects, a plaintiff can show an adverse effect 'indirectly,' by pleading that a defendant had market power plus 'some other ground for believing that the challenged behavior could harm competition in the market, such as the inherent anticompetitive nature of the defendant's behavior."  *Abbott Labs v. Adelphia Supply USA*, 15. Civ. 5826, 2017 U.S. Dist. LEXIS 205321, at *25–26 (E.D.N.Y. Aug. 10, 2017) (quoting *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 96–97 (2d Cir. 1998)).

The Complaint is devoid of facts in either of these categories.  *First*, Plaintiff does not plead facts regarding how the alleged arrangements between the galleries and the Museums have had an effect on the overall New York City market for contemporary art.  The Complaint alleges summarily that the adverse effect on competition is that the prices for works by those artists shown by the Museums are driven up.   AC ¶¶ 1, 2, 31, 36–42, 46.  But Plaintiff has not pleaded any facts regarding the actual prices of works that Plaintiff considers to be competitive as compared to the actual prices of his art, and how those prices result from the alleged conduct

---

[8] The implausibility of Plaintiff's geographic market also reflects the implausibility of any *per se* horizontal claim.  If the Museums compete against others in Boston, Chicago, Los Angeles, and indeed, around the world for access to contemporary art, the conspiracy alleged by Plaintiff makes little sense, because such a conspiracy would be ineffectual.

(nor could he).  He also has not pleaded facts about how other artists' work is *improperly* inflated by the conspiracy, or his work *improperly* deflated (nor could he).  See *Solent*, 914 F.Supp. 2d at 322.  There are also no allegations of reduced quality or reduced outputs.  *See, e.g.*, *Abbott Labs*, 2017 U.S. Dist. LEXIS 205321, at *26.  Instead, Plaintiff pleads that the New York City market for contemporary art is incredibly robust.  AC ¶¶ 47–48 ("more than 1,000 galleries, more than 75 museums and institutions, and more than 30 art fairs").  At best, Plaintiff has pleaded harm to himself—that he has not been selected for exhibition by the Museums—which is not cognizable under the Sherman Act.

*Second*, the Complaint contains no allegations regarding the percentage of the New York City contemporary art market allegedly controlled by the Museums.  Plaintiff conclusorily alleges only that the Museums "control the contemporary art market in New York City."  AC ¶ 39.  This statement is insufficient under the rule of reason and *Twombly*.  Instead, a plaintiff "seeking to use market power as a proxy for adverse effect must show market power, plus some other ground for believing that the challenged behavior could harm competition in the market." *Solent*, 914 F. Supp. 2d at 323 (internal citations omitted).  Indeed, Plaintiff's own allegations about the sheer number of art venues in New York City, AC ¶ 47, undercut his suggestion that the Museums have a particular market power in New York such that their purchases could have an overall effect on competition.  Though the Complaint states—in conclusory fashion—that Defendants "are prominent and prolific purchasers of contemporary art" who "routinely" spend "tens of millions of dollars on the purchase of contemporary art," AC ¶ 15, it also states that 80–90% of what is on view in American art museums is *donated*, meaning that Defendants mainly obtain art through transactions that are *outside* the market for art purchases and sales, *id.* ¶ 19.

16

In short, even within the narrowly defined relevant market put forth by Plaintiff, the Complaint does not allege facts showing an injury to competition in the market. *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 299 (S.D.N.Y. 2010); *see also Tops Mkts., Inc.*,142 F.3d at 97.

### 3.      Plaintiff lacks antitrust standing

In addition to Article III standing, a plaintiff bringing a private antitrust suit under the Sherman and Clayton Acts must allege antitrust standing. *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 157.  This analysis addresses "whether the plaintiff is a proper party to bring a private antitrust action." *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) ("*AGC*").  "[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement [the Court] must dismiss it as a matter of law." *Gatt Communications., Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75 (2d Cir. 2013).

Antitrust standing has two components.  First, the plaintiff must demonstrate antitrust injury, which is the kind of harm "the antitrust laws were intended to prevent and that flows from that which makes or might make defendants' acts unlawful." *Gatt*, 711 F.3d at 76 (alterations and internal quotation marks omitted).  Second, the complaint must show that plaintiff is an efficient enforcer of the antitrust laws. *See Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).  In conducting such an analysis, a court considers (1) whether the asserted violation directly, or remotely, caused the alleged injury; (2) "the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement"; (3) whether the plaintiff claims a speculative injury; and (4) "the difficulty of identifying damages and apportioning them among direct and indirect

victims so as to avoid duplicative recoveries." *Paycom Billing Servs. v. MasterCard Int'l, Inc.*, 467 F.3d 283, 290–91 (2d Cir. 2006).

    a.   <u>Plaintiff has not alleged antitrust injury</u>

With respect to injury, Plaintiff alleges that because of a conspiracy to inflate the price of certain works, he cannot sell his work "in the same manner as contemporary artists" whose work the Museums purchase or exhibit, nor can he set the same prices as such artists.  AC ¶ 46.  This is not antitrust injury.[9]

Insofar as Plaintiff alleges that the Museums have created a "closed system" from which Plaintiff seeks to benefit, *see id.* ¶¶ 22, 38, Plaintiff has pleaded himself out of an antitrust injury. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 439 (2d Cir. 2005) (plaintiffs failed to demonstrate antitrust injury where their complaint "was that they were denied the opportunity to command the same *super*-competitive pay earned by their [credentialed] colleagues").  The Complaint alleges that the Museums—as well as unnamed auction houses, collectors, and galleries—provide benefits to the artists within their ambit, such as the generation of "inflated sale prices" by auction houses*, AC* ¶ 20; "manipulati[on] [of] the secondary market" by galleries, *id.* ¶ 21; and "pre-exhibition speculation" in contemporary art by prominent collectors, *id.* ¶ 36. Plaintiff identifies his injury as his inability to profit from this allegedly "closed system."  *See id.* ¶¶ 22, 38 ("artists outside of [the] system are foreclosed from the financial benefits of having their art exhibited by the Museums, do not benefit from any of the promotion and profitability

---

[9] To the extent that Plaintiff's injury is characterized as exclusion from the market, he lacks antitrust standing for the same reasons detailed *supra* at 7, namely, Plaintiff's own allegations belie any exclusion from the market.  To the extent he alleges injury from other artists' work being improperly inflated, his antitrust standing fails for the same reasons detailed *supra* at 6–7.

garnered by the galleries and the [Museums], and do not see the financial success that comes with increased prices and sales of their art by prominent collectors"). This does not qualify as antitrust injury. *See Daniel*, 428 F.3d 438–39; *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 252 (7th Cir. 1994) (Easterbrook, J.) ("Plaintiffs, who want to obtain a credential that will help them charge higher prices, have pleaded themselves out of court on the antitrust claim.").

<p style="text-align:center">b.     <u>Plaintiff is not an efficient enforcer of the antitrust laws</u></p>

Even if Plaintiff had demonstrated antitrust injury—and he has not—he still would not qualify as a proper party to bring this action because he is not an efficient enforcer of the antitrust laws. *First*, the link between the purported conspiracy and Plaintiff's injury is too attenuated to support antitrust liability. If Plaintiff's work is priced lower than the work of other contemporary artists, it is the result of a number of factors outside of the control or purview of the Museums, including the judgment of numerous participants in the contemporary art market. *See* AC ¶¶ 2, 20–21. The Museums themselves are not allegedly parties in any of the purportedly inflated transactions. In addition, based on the article cited by Plaintiff, the role the exhibition of an artist's work plays in any price fluctuation is far from clear. *See* AC ¶ 25 n.5, Paul Sullivan, "A Museum's Seal of Approval Can Add to Art's Value, N.Y. Times (Oct. 15, 2016), (noting that museum shows often have no effect on the value of contemporary art), Cavanaugh Decl. Ex. 6. Courts "exclude claims based on conjectural theories of injury and attenuated economic causality that would mire the courts in intricate efforts to recreate the possible permutations in the causes and effects of a price change." *Reading Indus., Inc., v. Kennecott Copper Corp.*, 631 F.2d 10, 14 (2d Cir. 1980).

<p style="text-align:center">19</p>

*Second*, "the presence of other efficient antitrust enforcers 'whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement,'" *Daniel*, 428 F.3d at 444 (quoting *AGC*, 459 U.S. at 542), demonstrates that Plaintiff is not an efficient enforcer of the antitrust laws.  Plaintiff alleges that the Museums have conspired to raise the price of certain contemporary art, but as a competitor, he lacks any interest in reducing those prices.  *See Daniel*, 428 F.3d at 444.  Rather, it is the *purchasers* of the allegedly inflated contemporary art who have an interest in vindicating the antitrust laws.  This factor weighs strongly in favor of dismissal.  *See id.*; *see also AGC*, 459 U.S. at 542 n.47 ("[I]f there is substance to [plaintiff's] claim, it is difficult to understand why these direct victims of the conspiracy have not asserted any claim in their own right.").

*Third*, for the same reasons that Plaintiff's injury is too attenuated, his alleged damages are highly speculative.  *See supra* at 6–7, 19–20.  The Complaint itself demonstrates as much, alleging that the price of contemporary art depends on the behavior of numerous actors.  *See* AC ¶¶ 20–21.  Of course, there are many other variables that affect price, including quality, medium, size, availability of similar works, and the interests of the purchaser.  Plaintiff has not even hinted at how the effects of the purported conspiracy could be measured and separated out from the myriad other factors (*e.g.*, critical opinion within the art press and academe, publicity, and public tastes) that affect the price of his art.  Moreover, the Complaint provides no reason to conclude that Plaintiff's paintings are museum-quality and would be accepted as a donation to, or acquired by, one of the Museums in a state of perfect competition.  Therefore, because Plaintiff cannot ultimately put forward "evidence to support a just and reasonable estimate of damages," *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 779 (2d Cir. 2016) (internal quotation marks omitted), this factor also weighs heavily in favor of dismissal.

20

## IV.    PLAINTIFF'S DONNELLY ACT CLAIM FAILS TO STATE A CLAIM

Plaintiff's claim arising under the Donnelly Act must likewise be dismissed.  The Donnelly Act "is modeled on the Sherman Act and generally is construed in accordance with federal precedent."  *Menkes v. St. Lawrence Seaway Pilots' Ass'n*, 269 F. App'x 54, 55 n.3 (2d Cir. 2008).  Interpretations of the Sherman Act apply to the Donnelly Act with respect to each issue addressed herein.  *See Gatt Commc'ns., Inc.*, 711 F.3d at 81 (antitrust injury); *Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.*, 15 Civ. 5488, 2016 U.S. Dist. LEXIS 135941, at *20–21 (S.D.N.Y. Sep. 29, 2016) (concerted action), *aff'd*, 708 F. App'x 29 (2d Cir. 2017); *Mooney* 19 F. Supp. 3d at 502 (adverse effect on competition); *Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc.*, 34 A.D.3d 91, 94, 823 N.Y.S.2d 79, 81–82 (2d Dept. 2006) (geographic market).  Therefore, Plaintiff's Donnelly Act claim should be dismissed for the same reasons as his Sherman Act claim.

## V.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Because the Court has already given Plaintiff an opportunity to amend, and because any amendment would be futile, the Court should dismiss the Amended Complaint with prejudice.

The futility of amendment is a valid basis for denying leave to amend.  *E.g.*, *Williams v. Citigroup*, 659 F.3d 208, 214 (2d Cir. 2011).  "Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies."  *Garcia v. Paylock*, 13 Civ. 2868, 2014 U.S. Dist. LEXIS 10568, at *27 (E.D.N.Y. Jan. 28, 2014); *see Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45–46 (2d Cir. 2008).

Here, the very premise of Plaintiff's claims is irredeemably implausible.  This cannot be fixed by amendment.  In addition, the Court has already given Plaintiff one opportunity to amend, and the Complaint fails to remedy the flaws of its predecessor.  *See Solent*, 914 F. Supp.

21

2d at 324 (dismissing with prejudice because allegations were "not the type of activities that antitrust laws prohibit"); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 347 (E.D.N.Y. 2014) (dismissing with prejudice where plaintiff was already granted leave to address same deficiencies).  Accordingly, dismissal with prejudice is appropriate.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.


Dated:  April 27, 2018

<div style="margin-left:40%;">

By:    */s/ William F. Cavanaugh Jr.*
       William F. Cavanaugh, Jr.
       PATTERSON BELKNAP WEBB & TYLER LLP
       1133 Avenue of the Americas
       New York, NY 10036-6710
       Telephone: (212) 336-2000
       Fax: (212) 336-2222
       wfcavanaugh@pbwt.com

*Attorneys for Defendants The Metropolitan Museum of Art, Whitney Museum of American Art, The Museum of Modern Art, The Solomon R. Guggenheim Foundation (incorrectly sued as "Solomon R. Guggenheim Museum"), and The New Museum of Contemporary Art*

</div>

22

10357766

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that the foregoing Memorandum of Law in Support of Defendants'
Motion to Dismiss the Amended Complaint contains 6,999 words and otherwise complies in all
respects with the formatting rules in Section 2.D. of the Court's individual rules.


Dated:  April 27, 2018

By:   */s/ William F. Cavanaugh, Jr.*
William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710

23

10357766