William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pbwt.com

*Attorneys for Defendants The Metropolitan Museum of Art, Whitney Museum of American Art, The Museum of Modern Art, The Solomon R. Guggenheim Foundation (incorrectly sued as "Solomon R. Guggenheim Museum"), and The New Museum of Contemporary Art*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT CENEDELLA, on behalf of himself and all other similarly situated,<br><br>    *Plaintiffs,*<br><br> vs.<br><br>METROPOLITAN MUSEUM OF ART, WHITNEY MUSEUM OF AMERICAN ART, MUSEUM OF MODERN ART, SOLOMON R. GUGGENHEIM MUSEUM, AND NEW MUSEUM OF CONTEMPORARY ART,<br><br>    *Defendants.* | Civil Action No.:<br><br>18-CV-1029 (JGK)<br><br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** |

10495833

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................................ 1
ARGUMENT ..................................................................................................................................... 2
I.   Plaintiff Fails To State a Claim Under Section 1 of the Sherman Act
     and the Donnelly Act ................................................................................................................ 2
     A.  Plaintiff Has Not Plausibly Alleged an Agreement ............................................................ 2
         1.  Plaintiff relies on pre-*Twombly* precedent to avoid his fatal plausibility problem ........ 2
         2.  Plaintiff's theory is implausible on its face .................................................................... 3
         3.  Plaintiff's theory is implausible because it is not factually supported ........................... 5
     B.  The Complaint Is Inadequately Pleaded Under the Rule of Reason Because It
         Does Not Sufficiently Plead a Plausible Relevant Geographic Market, an Adverse
         Effect on Competition, or Antitrust Injury ......................................................................... 7
II.  PLAINTIFF FAILS TO DEMONSTRATE ARTICLE III STANDING ................................. 9
III. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ............................. 9
CONCLUSION ................................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
   13-md-2481, 2014 U.S. Dist. LEXIS 121435 (S.D.N.Y. Aug. 29, 2014) .................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2006)..........................................................................................1, 2, 4, 5, 6

*In re Currency Conversion Fee Antitrust Litig.*,
   265 F. Supp. 2d 385 (S.D.N.Y. 2003)..........................................................................7

*In re Eaton Vance Mut. Funds Fee Litig.*,
   403 F. Supp. 2d 310 (S.D.N.Y. 2005)..........................................................................9

*Hamilton Chapter of Alpha Delta Phi v. Hamilton Coll.*,
   128 F.3d 59 (2d Cir. 1997)...........................................................................................2

*Hosp. Building Co. v. Trustees of Rex Hosp.*,
   425 U.S. 738 (1976).....................................................................................................2

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).....................................................................................4, 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).....................................................................................................4

*Mayor & Council of Balt. v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013).........................................................................................7

*Menkes v. St. Lawrence Seaway Pilots' Ass'n*,
   269 F. App'x 54 (2d Cir. 2008) ...................................................................................2

*In re NASDAQ Market-Makers Antitrust Litig.*,
   894 F. Supp. 703 (S.D.N.Y. 1995) ..............................................................................7

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)...........................................................................................2

**Other Authorities**

6 Areeda & Hovenkamp, *Antitrust Law* (2018).............................................................3

## PRELIMINARY STATEMENT

In response to the Museums'[1] motion to dismiss, Plaintiff offers only a recitation of the inadequate facts pleaded in the Complaint and a mischaracterization of what is required under the Supreme Court's clear precedent in *Twombly*.  The Complaint remains fundamentally implausible because it does not allege facts supporting any inference of an agreement among the Museums and/or galleries—or, just as significant, explain *why* the Museums and/or the galleries would conspire to exclude Plaintiff if his artwork would generate more interest than the works actually selected by the Museums' curators and/or galleries.  Nor does Plaintiff explain why leading non-conspiring museums and galleries throughout the United States are not promoting his work if it is as worthy of praise as he suggests.  Further dooming his claim, Plaintiff fails to allege a plausible market in which competition has been affected by the Museums' actions.  He also fails to adequately explain how he has standing under either Article III or the antitrust laws.

Because Plaintiff's Complaint is defective beyond remedy, leave to amend would be futile, and the Court's dismissal should be with prejudice.

---

[1] Capitalized terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 32) ("Opening Brief") unless otherwise noted.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT AND THE DONNELLY ACT[2]

#### A. Plaintiff Has Not Plausibly Alleged an Agreement

As established in the Museums' Opening Brief, the Complaint does not plausibly plead an agreement in violation of the antitrust laws. The alleged agreement is implausible because (1) the purported underlying scheme makes no sense and (2) it is utterly devoid of factual support.

##### 1. Plaintiff relies on pre-*Twombly* precedent to avoid his fatal plausibility problem

Plaintiff incorrectly cites to the *Conley* pleading standard, under which "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." Plaintiff Opposition Brief ("Opp.") at 6 (quoting *Hamilton Chapter of Alpha Delta Phi v. Hamilton Coll.*, 128 F.3d 59, 62 (2d Cir. 1997) and *Hosp. Building Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976)). This standard has been "abandoned" in favor of the plausibility standard of pleading set forth in *Twombly* and *Iqbal*. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). Indeed, the dissenters in *Twombly* specifically recognized that the majority overruled the exact language from *Hospital Building Co.* upon which Plaintiff now relies. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 586–87 (2006)

---

[2] The Donnelly Act "generally is construed in accordance with federal precedent," *Menkes v. St. Lawrence Seaway Pilots' Ass'n*, 269 F. App'x 54, 55 n.3 (2d Cir. 2008), and this claim fails for the same reasons as Plaintiff's Sherman Act claim, *see* Opening Brief at 21.

(Stevens, J., dissenting). The precedent that actually applies to this case is clear, and it compels dismissal of the Complaint.³ Opening Br. at 4–5.

### 2. Plaintiff's theory is implausible on its face

Plaintiff's opposition cannot cure the fundamental implausibility at the core of his case: he does not provide a single plausible reason that five nonprofit museums would conspire with each other and with various galleries to form a "corporate museum cartel that manipulates the overall art market," resulting in the "exclusion" of Plaintiff and a class of artists (apparently a class based simply on not having been shown at the Museums). Opp. at 2. Instead, he simply announces himself as "legendary" and "talent[ed]," *id.* at 1, and asks this Court to infer that the absence of his art from the Museums is proof of a conspiracy against him. But Plaintiff never explains why prominent museums (and galleries) would purposely exclude "talented" artists such as Plaintiff in executing their purported scheme. *See* 6 Areeda & Hovenkamp, *Antitrust Law* ¶ 1434c2 (2018) (noting with approval that "most courts rely on the *absence* of motivation or offense to self-interest to preclude a conspiracy inference"). Nor does he explain why the existence of a "cartel" is more plausible than the simple fact that museums, by their very essence, exist to exhibit and collect what they deem to be the most worthy art, and as a result have selected artists other than Plaintiff.

Plaintiff argues that the Museums are trying to increase their "profits," which he equates to "the value of their permanent collections," Opp. at 9, but he ignores that a conspiracy to inflate

---

³ Implicitly acknowledging the contradictions in his own Complaint, Plaintiff argues that Defendants merely "disagree" with his allegations and states that he is entitled to plead alternative or inconsistent theories. Opp. at 7. This misses the point, which is that the factual inconsistencies in the Complaint undermine its plausibility. Opening Br. at 5.

3

the value of the Museums' collections would only create a greater incentive to select Plaintiff's work if, in fact, it is as artistically valuable as Plaintiff contends, *see generally Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97 (1986) ("[I]f petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy.").[4]  Moreover, Plaintiff fails to resolve an obvious flaw in his theory:  a conspiracy to inflate the value of their collections would only *increase* the financial burden on them.  *See* Opening Br. at 10.

      Of course, there is a simpler and far more plausible inference that can be drawn from the fact that the Defendant Museums—and apparently galleries, other museums, and auction houses (whether or not part of the conspiracy)—have chosen not to purchase or exhibit Plaintiff's artwork:  they simply viewed others' work as more worthy of collecting and showing.  Indeed, if there were a conspiracy among the Museums to exclude Plaintiff, one would expect that his work would be in high demand at the many prominent non-conspiring museums, galleries, and auction houses.  Plaintiff has pleaded no such facts.  Where, as here, there is an "obvious alternative explanation" for the facts alleged, the purported conspiracy is not plausibly pled and the Complaint must be dismissed.  *Twombly*, 550 U.S. at 567; *accord In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322–23 (3d Cir. 2010) ("allegations of conspiracy are deficient if there are 'obvious alternative explanation[s]' for the facts alleged") (alterations in original).

---

[4] Nor does he explain how the Museums' interest in attracting sponsorships, raising ticket prices, or borrowing from other institutions is consistent with anything other than displaying the work the Museums deem most worthy.  Opp. at 3.

### 3. Plaintiff's theory is implausible because it is not factually supported

Plaintiff asserts that the Complaint is "replete" with allegations regarding an agreement between the Museums and supposed co-conspirators. Opp. at 11. What is missing are *factual* allegations. The Complaint does not allege any persons, places, dates, times, or communications with respect to the purported agreement. And while Plaintiff is correct that "evidence of an explicit agreement is not required," *id.*, the Complaint nevertheless must allege sufficient facts to support a plausible inference that the Museums reached an agreement, *see In re Aluminum Warehousing Antitrust Litig.*, 13-md-2481 (KBF), 2014 U.S. Dist. LEXIS 121435, at *99–100 (S.D.N.Y. Aug. 29, 2014) (citing, *inter alia*, *Twombly*, 550 U.S. at 556), *aff'd*, 833 F.3d 151 (2d Cir. 2016). It does not.

Rather, Plaintiff's allegations do not plausibly support the conspiracy he describes. *First*, Plaintiff repeats his claim that the Museums select art "not based on any merit-based standard" but rather simply choose "the artwork of a select few artists who are represented by a select few galleries and who have relationships with prominent personal collectors and donors." Opp. at 12 (citing Compl. ¶¶ 17–19).[5] This is speculation, not fact. Although the Complaint cites an article contending that museums throughout the country give "almost one-third" of their solo exhibitions to artists represented by five galleries, conspicuously absent is any allegation that *these* five Museums give the majority of *their* solo exhibitions to artists represented by the five

---

[5] *But see id.* at 2 (acknowledging that the Museums' curatorial policies are publicly available and that the Met's policy calls for the acquisition of "exceptional works of art . . . that significantly further the Museum's stated mission").

5

relevant galleries.[6] Nor are there any allegations regarding the many galleries that represent the artists featured in *group* exhibitions which, as Plaintiff concedes, provide valuable career boosts to artists, *see* Compl. ¶ 25, or about the artwork held in the Museums' permanent collections.

*Second*, Plaintiff repeats his claim that unnamed galleries "artificially" maintain high prices for certain art by "sending people to bid on artwork at auction and prohibiting reselling of their artists' work." Opp. at 12 (citing Compl. ¶ 21). What this has to do with the Museums is a mystery, but regardless, merely alleging parallel behavior is insufficient to make out a Section 1 claim. *Twombly*, 550 U.S. at 556–57.

*Third*, Plaintiff repeats his claim that the Museums "ensur[e] that their board members and patrons also receive inside information about exhibits that permits them to purchase art at a discount." Opp. at 12 (citing Compl. ¶ 36). Even if this were true, it does not evidence an *agreement* to restrain trade, and would not be anticompetitive in any event.

*Fourth*, Plaintiff repeats his claims that galleries sell art to museums, including the Defendants, at a discount, and may also sponsor certain exhibits at those museums. Opp. at 12 (citing Compl. ¶¶ 19, 31–35). But again, even accepting these allegations as true, they do not

---

[6] Plaintiff repeatedly claims that 90% of "major" solo exhibits at the Guggenheim featured artists represented by five certain galleries. Opp. at 4, 9, 13 (citing Compl. ¶ 30). This is misleading. The article cited by Plaintiff covers only the years 2007 to 2013, does not address museums' overall collections, and notes that when all Guggenheim solo shows are properly taken into account, only "around 55% of the museum's solo exhibitions featured artists from the five galleries." Cavanaugh Decl. Ex. 1. Thus, even in the narrow context of solo exhibitions at the Guggenheim from five to nine years ago, nearly half of the art featured was *not* from one of these galleries. Plaintiff offers no basis to infer that his failure to be included among the other half of exhibited work or in group shows is the product of a nefarious conspiracy—anticompetitive or otherwise.

6

support the existence of any anticompetitive agreement with the Museums—particularly since the articles relied upon by Plaintiff describe these practices as ubiquitous in the art world.[7]

Nor is Plaintiff correct that "plus factors" are unnecessary at this stage of the litigation. Opp. at 13. In fact, the Second Circuit has observed that "plaintiffs relying on parallel conduct *must* allege facts that, if true, would establish at least one 'plus factor,' since plus factors are, by definition, facts that tend to ensure that courts punish concerted action—an actual agreement—instead of the unilateral, independent conduct of competitors." *Mayor & Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 137 (2d Cir. 2013) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 323) (emphasis added). As he admittedly has not pleaded plus factors, Plaintiff simply does not "allege enough facts to support the inference that a conspiracy actually existed" under the applicable standard. *Id.* at 136.[8]

**B.    The Complaint Is Inadequately Pleaded Under the Rule of Reason Because It Does Not Sufficiently Plead a Plausible Relevant Geographic Market, an Adverse Effect on Competition, or Antitrust Injury**

Plaintiff argues that New York City is the relevant geographic market because it is "inordinately influential," and the place where "high-end contemporary art" is sold. Opp. at 14. These subjective assertions are insufficient to plead a market. They do not establish that New

---

[7] *See* Cavanaugh Decl. Ex. 4, *cited in* Compl. ¶ 19 ("Large museums and prestigious collectors often pay less and have special access to certain work."); Cavanaugh Decl. Ex. 1, *cited in* Compl. ¶ 32 (analyzing exhibitions at 68 museums nationwide, not limited to contemporary art or the New York market).

[8] The pre-*Twombly* cases cited by Plaintiff are not to the contrary. Opp. at 13 (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 894 F. Supp. 703, 713–14 (S.D.N.Y. 1995) (analyzing plus factors at the pleading stage); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 418 (S.D.N.Y. 2003) (same)).

York City—as opposed to the many other cities with galleries and museums in the country and the world—is a distinct geographic market for individuals or entities seeking to purchase or display such work. Plaintiff's own vague allegations state that his work has been shown "throughout the United States and Europe," Compl. ¶ 6, Opening Br. at 13–14, and the Complaint cites articles discussing the fluidity of the art market as stretching across the world, *id.* Plaintiff simply has not provided any compelling reason to limit the relevant market to New York City.

Plaintiff does not meaningfully dispute Defendants' argument that he has not adequately pleaded an anticompetitive effect. Opening Br. at 15–17. He merely asserts in a conclusory fashion that he has plausibly alleged an anticompetitive effect because he and others like him are "not able to access" the contemporary art market in New York City. Opp. at 13–14. But he has not alleged any facts regarding market power, increased prices, reduced quality, or reduced outputs that could support the allegation that five named Museums have precluded him from the market for contemporary art. *See id.* This also dooms his Complaint.

Finally, Plaintiff fails to show that he has adequately pleaded antitrust standing. Plaintiff purports to disclaim seeking the benefit of the alleged conspiracy, but his Complaint belies this suggestion: Plaintiff's injury flows from the supposed denial of the benefits of the closed system that Plaintiff also claims constitutes an antitrust conspiracy. *See* Compl. ¶¶ 22, 38. Moreover, he fails to respond to any of the Museums' arguments that he is not an efficient enforcer of the antitrust laws, merely asserting that he has suffered a direct injury, without any citations to facts or law. *See* Opp. at 11. Because Plaintiff has not demonstrated antitrust injury, the Complaint should be dismissed. *See* Opening Br. at 18–20.

## II. PLAINTIFF FAILS TO DEMONSTRATE ARTICLE III STANDING

Plaintiff effectively concedes that he has been injured by any higher prices charged by competitors, nor shown exclusion from the New York City contemporary art market.  Opp. at 8-9.  Plaintiff now claims that he has shown injury through his purported exclusion from "an entire [undefined] stratum of the New York City art market," Opp. at 8, but he has shown no such thing, and he does not plead any facts showing that the allegedly conspiring entities have any effect on his ability to sell his work to other influential art market participants.  Moreover, Plaintiff fails to meaningfully respond to the Museums' argument that he has not sufficiently alleged that but for the Museums' supposed conspiracy, they would acquire or show his work. *See* Opening Br. at 6–7.  Even accepting all of Plaintiff's well-pleaded allegations as true, he has failed to carry his burden and demonstrate Article III standing.

## III. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff asks the Court for another opportunity to amend, but he makes no argument that amendment would not be futile (or what he would do differently if given a chance to amend).  *See In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005) (JGK), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) (dismissal with prejudice was proper where plaintiffs had already amended the complaint and "did not propose any [further] amendments nor indicate how amending would cure any alleged deficiencies").  And while Plaintiff complains that this Court "has yet to pass on the merits of a pleading from the Plaintiff," litigants are not "entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies."  *Id.* (citations omitted).  Moreover, once aware of the Museums' arguments,

9

Plaintiff was given an opportunity to amend and did so. Because the fundamental flaws in the Complaint cannot be remedied, dismissal should be with prejudice.

## CONCLUSION

For the foregoing reasons and those stated in their opening brief, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: July 9, 2018

                                                By:   */s/ William F. Cavanaugh Jr.*
                                                        William F. Cavanaugh, Jr.
                                                        PATTERSON BELKNAP WEBB & TYLER LLP
                                                        1133 Avenue of the Americas
                                                        New York, NY 10036-6710
                                                        Telephone: (212) 336-2000
                                                        Fax: (212) 336-2222
                                                        wfcavanaugh@pbwt.com

                                                        *Attorneys for Defendants The Metropolitan Museum of Art, Whitney Museum of American Art, The Museum of Modern Art, The Solomon R. Guggenheim Foundation (incorrectly sued as "Solomon R. Guggenheim Museum"), and The New Museum of Contemporary Art*

## **CERTIFICATION OF COMPLIANCE**

I hereby certify that the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint contains 2,751 words and otherwise complies in all respects with the formatting rules in Section 2.D. of the Court's individual rules.

Dated: July 9, 2018

By: */s/ William F. Cavanaugh Jr.*
William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710